UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20398-CR-RUIZ

UNITED STATES OF AMERICA,

v.

FRANCISCO TONARELY,

Defendant.
_____/

## AGREEMENT FOR PRETRIAL DIVERSION

1. The United States and the Defendant, Francisco Tonarely, hereby enter into this Agreement for Pretrial Diversion (the "Agreement") on the charges set forth in the Indictment in the above-referenced case.

2. Tonarely agrees: (a) that he criminally violated 18 U.S.C. § 371, as charged in the Indictment and set forth more fully in Attachment A to this Agreement; and (b) to otherwise comply with all terms set forth in this Agreement. Tonarely agrees that the factual statements set forth in Attachment A to this Agreement are true and accurate.

3. Tonarely hereby waives all statutory, procedural, and constitutional rights to a speedy trial for as long as this Agreement is in effect.

4. Tonarely agrees to: (a) truthfully and completely disclose all information with respect to his activities and the activities of others concerning all matters about which the United States inquires of him, which information may be used for any purpose; (b) cooperate fully with the United States and any other law enforcement agency or other criminal or civil agency of the United States, or office in the United States, provided that such other United States agency, or office agrees to be bound by this Agreement; (c) attend all grand jury proceedings, hearings, trials, judicial proceedings, and meetings at which the United States may request his presence; (d) provide to the United States, and upon request, any document, record, or other tangible evidence relating to matters about which the United States or any designated Department, agency or office inquires of him; (e) provide truthful and complete information and testimony when called upon by the United States, whether in interviews, before a grand jury, or at any trial or other court proceeding with respect to any matters about which the United States may request; and (f) bring to the attention of the United States all crimes that he has committed under the laws of any jurisdiction, and all administrative, civil, or criminal proceedings, investigations, or prosecutions in which he has been or is a subject, target, party or witness. Moreover, any assistance Tonarely may provide to federal criminal investigators shall be undertaken by Tonarely only pursuant to

the specific instructions and under the specific control of the United States and designated federal criminal investigators.

5. Tonarely agrees to comply with all conditions imposed upon him by the Court and by the Pretrial Services/Probation Officer. Those conditions will include regular reporting as directed by Pretrial Services/Probation, and refraining from any violation of federal, state, or local laws.

6. Special Conditions of Pretrial Diversion include the following:

   A. Tonarely shall report to Pretrial Services as directed;

   B. Tonarely shall not violate any federal, state, or local law and shall contact the U.S. Probation Officer immediately if arrested or questioned by a law enforcement officer;

   C. Tonarely shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the U.S. Probation Officer;

   D. Tonarely shall work regularly at a lawful occupation and/or regularly attend school, and Tonarely shall notify the supervising officer prior to any employment changes;

   E. Tonarely shall maintain his residence and not move without permission from his supervising U.S. Probation Officer;

   F. Tonarely shall complete one hundred twenty (120) hours of community service.

   G. Tonarley shall not leave the Southern District of Florida without prior permission from his supervising U.S. Probation Officer.

7. If Tonarely withdraws from the Agreement for any reason, or commits or attempts to commit any additional federal, state or local crimes, or intentionally gives materially false, incomplete, or misleading testimony or information, or otherwise violates any provision of this Agreement, then:

   A. The United States will be released from its obligations under the Agreement.

   B. Tonarely will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date the Agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecutions, Tonarely agrees to waive any statute-of-limitations defense; and

C. Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by Tonarely, and all such information, statements, and leads derived therefrom may be used against Tonarely in such prosecution. Tonarely waives any right to claim that statements made before, on, or after the date of this agreement, including the statement of facts accompanying this agreement or adopted by Tonarely and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution of federal law.

8. The United States and Tonarely agree that prosecution for the offenses charged in this case shall be deferred for a period of twelve months from the date that this Agreement is executed, provided that Tonarely abides by the conditions and the requirements of this Agreement.

9. After successfully completing the diversion program and fulfilling all of the terms and conditions of the Agreement, the United States will move to dismiss the Indictment against Tonarely, with prejudice.

10. Tonarely understands that it is in the United States' sole discretion to determine whether he breaches this Agreement. Tonarely also understands that, if he violates the conditions of this Agreement, the United States may revoke or modify any conditions of the pretrial diversion program or change the period of supervision. In such a case, the United States would furnish Tonarely with notice specifying the conditions of the Agreement alleged to have been violated.

[THIS SPACE INTENTIONALLY LEFT BLANK]

11. This Agreement constitutes the entire understanding of the parties. There are no other terms.

_____    12/9/24
FRANCISCO TONARELY                 Date
DEFENDANT

_____    12/9/24
JEFFREY L. COX                     Date
JAMES D. SALLAH
COUNSEL FOR FRANCISCO TONARELY

_____    12/10/24
ALEXANDRA D. COMOLLI               Date
ELI S. RUBIN
ELIZABETH YOUNG
ASSISTANT U. S. ATTORNEY

_____    12/16/2024
RISELDA R. RUIZ                    Date
CHIEF U.S. PROBATION OFFICER

4

## ATTACHMENT A

In June and July 2022, FRANCISCO TONARELY profited by insider trading on a confidential tip from FEDERICO NANNINI, provided to him by ALEJANDRO THERMIOTIS, that Infrastructure and Energy Alternative Inc. ("IEA") was likely to be acquired by Coral Gables-based MasTec Inc. ("MasTec"). TONARELY knew that this tip about the acquisition was material non-public information.

TONARELY was friends with FEDERICO NANNINI from high school and knew that, in 2021, NANNINI began working at a global consulting firm focusing on mergers and acquisitions. On LinkedIn, TONARELY "liked" NANNINI's post announcing the job. TONARELY and FEDERICO NANNINI also went to high school with THERMIOTIS. The three stayed in touch with each other after college when they were all living in the Miami area.

Specifically, on approximately June 16, 2022, THERMIOTIS and FRANCISCO TONARELY discussed, via text message, various stock and cryptocurrency trades. At one point, FRANCISCO TONARELY texted that he "want[ed] to make some money right now…what do we do." Shortly thereafter, THERMIOTIS and TONARELY spoke for approximately a minute and a half, during which TONARELY logged into his Robinhood account. During the call or shortly thereafter, ALEJANDRO THERMIOTIS tipped TONARELY about buying shares of IEA before the acquisition by MasTec. THERMIOTIS knew TONARELY would trade on the information. FEDERICO NANNINI then interrupted their call by calling THERMIOTIS. THERMIOTIS and FEDERICO NANNINI proceeded to speak for approximately 35 minutes.

At the beginning of his call with FEDERICO NANNINI, ALEJANDRO THERMIOTIS texted TONARELY, "Don't text me about it." TONARELY replied twice, "Call me," "Call me now." While on the phone with FEDERICO NANNINI, THERMIOTIS called TONARELY twice.

When THERMIOTIS got off the phone with FEDERICO NANNINI, he called TONARELY and the call lasted approximately three minutes. During the call, FEDERICO NANNINI again called THERMIOTIS. THERMIOTIS and FEDERICO NANNINI then spoke for almost an hour and six minutes, from approximately 4:14PM to 5:20 PM. Less than four minutes after the call, THERMIOTIS texted TONARELY, "Not a soul okay." TONARELY responded, "Obviously…You told me not to." That same day, TONARELY purchased 321 shares of IEA for a total of $2,800.50.

During the relevant time period, TONARELY knew that FEDERICO NANNINI had tipped THERMIOTIS about the likely acquisition and that THERMIOTIS was going to buy FEDERICO NANNINI a watch or give him $50,000 in return for the inside information.

On July 25, 2022, after a public announcement that IEA was going to be acquired by MasTec, TONARELY sold his shares of IEA at a profit of $1,510.26.