UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cr-20398

UNITED STATES OF AMERICA

v.

FEDERICO NANNINI,
MAURO NANNINI,
ALEJANDRO THERMIOTIS, and
FRANCISCO TONARELY

_____/

### ALEJANDRO THERMIOTIS' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Defendant, Alejandro Thermiotis, through undersigned counsel, hereby submits his memorandum in aid of sentencing and motion for downward variance based on the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) and *United States v. Booker,* 543 U.S. 220 (2005).

**I.    INTRODUCTION**

Alejandro accepts full responsibility for his conduct and does not offer any excuses for his actions. But in considering the appropriate sentence, the Court should recognize that Alejandro was not an experienced financial professional when he engaged in the criminal conduct. He was a young, risk-taking, 24-year-old who did not fully appreciate the wrongfulness of trading on material, non-public information. This profound and aberrational lapse in judgment does not define the person that Alejandro is, nor the one he hoped he would grow up to become. He is a devoted son, loving brother, and loyal friend. He is an intelligent young man, who has significantly matured since this incident, and who now understands the full import of his actions. He is ashamed of his

actions and has committed himself to take any and every opportunity that comes from this to ensure that the trajectory of his life never comes close to an event like this again. Therefore, for the reasons discussed further in this memorandum, Alejandro respectfully requests that the Court impose a sentence below the United States Sentencing Guidelines range (the "Guidelines") in this case.

## II. LEGAL STANDARD

Title 18, section 3553(a), requires the Court to fashion a sentence "sufficient, but not greater than necessary, to serve the purposes" of sentencing. Although the Sentencing Guidelines are the starting point for the calculation of an appropriate sentence, a district court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Instead, the Court "must make an individualized assessment based on the facts" of each case, recognizing that a within-Guidelines sentence may be greater than necessary to serve the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 91 (2007); *see also United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("if *Booker* is to mean anything, it must be that the district courts are obligated to impose a reasonable sentence, regardless of the guidelines range, so long as the guidelines have been considered."). The Court is required to consider the following seven factors before imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.    RELEVANT SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Among the section 3553(a) factors most applicable here are the nature and circumstances of the offense and the history and characteristics of the defendant, the needs for the sentence imposed to reflect the seriousness of the offense and to create general and specific deterrence, and the need to avoid unwarranted sentencing disparities amongst defendants.

#### A) Alejandro's Personal Characteristics and History

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). "**Matters such as age, education, mental or emotional condition**, medical condition . . . employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. United States*, 551 U.S. 338, 364-65 (2007) (emphasis added); *see also United States v. Prosperi*, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to home detention because the loss numbers did not take into account the personal characteristics of the defendant); *United States*

3

*v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance below the Guidelines range based in part on "the support that the defendant stood to receive from his family [and] personal qualities indicating his potential for rehabilitation"). These considerations warrant a below-Guidelines sentence here.

Alejandro was born in Caracas, Venezuela in 1998. Alejandro's parents have been together for over 30 years. Alejandro and his two siblings grew up in a loving and supportive household that is incredibly close-knit. Alejandro continues to reside at home and maintains a strong relationship with his parents, siblings, and extended family. When Alejandro was around ten years old, his family relocated to Miami to escape the instability and crime in Venezuela.

Although Alejandro has always valued his education, his primary passion growing up was motorcycle racing. Alejandro began riding motorcycles when he was four years old. By thirteen, he was competing in races across Florida. Motorcycle racing requires tremendous courage and a willingness to take massive risks. It is a demanding sport where a single mistake can result in a high-speed crash resulting in serious injury or death. At the professional level, cyclists race at speeds of up to 179 mph. Even at the elite racing level, crashes are common.[1] Despite these dangers, Alejandro dreamed of becoming a professional motorcycle racer and dedicated himself to pursuing it as a career. Because California is the heart of professional motorcycle racing in the United States, Alejandro decided to pursue his college education in California. Throughout college, Alejandro balanced a full-time class load, while pursuing his racing dreams. During the

---

[1] *See* David Campillo-Recio, *Accidents and Injuries in Elite MotoGP Motorcycle Riders*, 18 J. of Clinical Orthopaedics and Trauma, 25 (2021).

racing season, Alejandro would spend the first half of his week studying and spend the rest of his week traveling and competing across California.

Competing at this level is extremely expensive due to the significant travel, equipment maintenance, and competition costs for a racer. An individual racer can easily spend $200,000 to $300,000 per racing season. And while Alejandro's family supported Alejandro's racing dreams, his father's business collapsed just as he was beginning college. The family's sudden loss in income motivated Alejandro to search for a way to support his racing career while staying enrolled in college. This ultimately led to Alejandro's foray into the stock market. Applying concepts he learned in college finance classes, Alejando taught himself about investing in the stock and option markets. During this time, Alejandro also rekindled his friendship with Federico Nannini based on their shared interest in the stock market. While Alejandro and Nannini families had been friends for years, Alejandro and Federico had developed different friendship circles. But during Alejandro's multi-hour drives to racetracks, he would talk with Federico about their investing ideas. Prior to this case, Federico never provided Alejandro with material, non-public information, and Alejandro never solicited such information from his friend.

Unfortunately, in 2022, Alejandro was involved in a traumatic crash during a race and snapped his femur.[2] After undergoing surgery, Alejandro returned to Florida to live at home and undergo rehabilitation. Although Alejandro recovered from the accident, the crash marked the beginning of the end of his racing career. These are the kinds of dangers that professional motorcycle racers face whenever they get on their bikes. Acceptance of that level of risk far exceeds what most people would tolerate. But Alejandro grew up taking such risks on a regular

---

[2] To be clear, Alejando executed the stock purchases prior to his 2022 motorcycle accident.

5

basis. And it was this comfort with risk that fed into his approach towards investing. Alejandro dove head-first into investments. He did not diversify, and he embraced high-risk opportunities with an "all-in" attitude. Alejandro never sought to commit insider trading. But when his friend, Federico, presented him with the "opportunity" for an uncertain, high-risk, and lucrative investment, he seized that risk without thoughtfully considering his actions.[3] Alejandro now recognizes that this impulsivity, coupled with his lack of maturity in appreciating the full ramifications and wrongfulness of his actions, was destructive and led him to make the wrong decision. He fully accepts responsibility for this decision and respects whatever sentence the Court will impose on him. But undersigned counsel respectfully requests and urges the Court to consider Alejandro's youth, lack of maturity, and unique personal characteristics in fashioning a below-Guidelines sentence.

**B) The Court must consider the nature and circumstances of the offense and avoid any sentencing disparity amongst the defendants**.

The law requires the Court to also consider the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). The Supreme Court has affirmed that a sentencing judge must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Alejandro stands in stark contrast to the typical insider trading defendant. The average inside trader is around 44 years old and most often, a business executive, financial professional,

---

[3] When Alejandro made the investment, the MasTec acquisition of Infrastructure and Energy Alternatives, Inc. was only a possibility. In fact, at one point after Alejandro made the stock purchase, Federico wrote to him, estimating that it was 60% likely that the MasTec acquisition *would not go through*. *See* [D.E. 64 at ¶¶ 27-29] (Thermiotis Factual Proffer).

lawyer, or accountant.[4] Alejandro was none of these things. He was a young man trying to earn money for himself by trading stocks and options based on self-taught methods.

Alejandro never sought out to trade on insider information, and this was truly a first-time and last-time occurrence. He never asked Federico to provide him with information obtained from his job and never solicited material, non-public information from anyone. It was Federico's decision to betray the trust of his company and client by disclosing the potential IEA acquisition to others, including to his father, an experienced and successful financial professional. Alejandro knows that he should never have acted on the information that Federico gave him, and he will forever regret this poor judgment. And while Alejandro did pass along Federico's tip to his friend, Francisco Tonarely, he was not an insider or person who abused a position of trust to tip others.[5] This is a critical distinction according to the Supreme Court: "**In the context of insider trading, we do not believe that a person whose liability is solely derivative can be said to be as culpable as one whose breach of duty gave rise to that liability in the first place**." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 313 (1985). (emphasis added).

In seeking to avoid any unwarranted sentencing disparities, the Court should consider that Alejandro most closely compares to his friend, Francisco, who received pretrial diversion in this case. *See* [D.E. 60]. Alejandro and Francisco are both young men who were trading stocks for their own benefit, and not as experienced financial professionals. Alejandro and Francisco both traded

---

[4] Kenneth R. Ahern, *Information Networks: Evidence from Illegal Insider Trading Tips*, 125 J. of Financial Economics, 26, 33-34 (2017).

[5] Alejandro's Factual Proffer references a discussion between Alejandro and Federico regarding a wristwatch. *See* [D.E. 64 at ¶ 34]. But as Alejandro explained to the Government, he initially intended to give Federico a watch as a gift for providing him the tip. This was not solicited by Federico or bargained-for consideration for the tip.

on material, non-public information that originated from Federico. While Alejandro did pass long Federico's tip to Francisco, Alejandro did so for no benefit whatsoever. The fundamental difference between these two defendants were the size of their trades. And while the insider trading Guidelines calculation is driven by the amount the defendant stood to gain with the trade, Alejandro and Francisco's conduct largely reduces to the same, wrongful conduct—they traded on material, non-public information that they received from a friend. The disparity in outcomes between the two individuals with almost the exact same conduct, creates a sentencing disparity simply based on financial resources and risk-appetite.

### C) An appropriate sentence should reflect Alejandro's immediate acceptance of responsibility and his cooperation with the Government.

Alejandro promptly accepted responsibility for his actions in this case. At the inception of this case, Alejandro met with the Government. He did not minimize or excuse his actions, disclosed all the information he knew that could assist the Government's investigation, and agreed to cooperate. In fact, the Government quickly and affirmatively acknowledged how impressed they were with his candor during the interview process. Indeed, information provided by Alejandro assisted the Government in securing guilty pleas of all the co-defendants in this case not only by corroborating the Government's allegations, but also, by providing additional information unknown to the Government. Information the Government has identified as being critical to secure these guilty pleas. [D.E. 64 at ¶¶ 47-49].[6] Indeed, the Government has moved for a sentencing reduction, pursuant to § 5K1.1 of the Guidelines based on Alejandro's substantial assistance to the

---

[6] Alejandro also told Government investigators about a conversation between him and Federico where Federico explained what legal defense his father would use to explain the trade. *See* [*id.* at ¶ 46].

8

Government. *See* [D.E. 85]. Alejandro has also promptly accepted responsibility in the civil proceeding brought by the U.S. Securities & Exchange Commission.[7] These actions demonstrate Alejandro's remorse for his actions, his willingness to accept responsibility, and his sincerity in never again finding himself before a criminal court.

> **D) Not only will Alejandro never commit another crime, the specific and general purposes of deterrence have been accomplished in this case**.

The Court must also ensure that the sentence imposed is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, generate specific and general deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). The Eleventh Circuit in *United States v. Clay* stressed that a sentencing court is "require[d] ... to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." 483 F.3d 739, 745 (11th Cir. 2007). No matter what sentence the Court imposes, this offense will be Alejandro's first and last crime. Before this case, Alejandro had never been in been trouble before. Alejandro's family has supported him and lived through this ordeal. Watching his family suffer because of his own actions has deeply shamed Alejandro and instilled in him a unique appreciation for the impact of his actions not just on his own life, but also, the lives of his loved ones. Seeing the anguish he has inflicted on his family is reason alone that Alejandro will never re-offend.

Alejandro has already sustained serious financial punishment for his conduct. Setting aside any potential civil penalties that the SEC will seek, *Alejandro will have repaid the full amount of his forfeiture by the time of his sentencing*, thereby completely disgorging himself of any benefit

---

[7] *See Securities & Exchange Commission v. Federico Nannini et al.*, No. 24:CV-23531-BB, at [D.E. 48].

he received from the illegal trade. Finally, Alejandro will be burdened with a felony conviction that will serve as an effective bar from working in many—if not all—parts of the financial sector. *See United States v. Emmenegger*, 329 F. Supp. 2d 416, 428 (S.D.N.Y. 2004) (finding that risk of recidivism eliminated by the fact that the offense at issue was "particularly adapted to [the defendant's] chosen career," "[t]hat career is over, and his potential to commit this particular type of crime has been eliminated"). Regardless of his future career, Alejandro will never re-offend. His personal characteristics, including his age, education, and family, support this fact. *See id.* (finding that the defendant's "youth and inexperience reinforce this low likelihood" that the defendant would re-offend.[8]

By acknowledging the seriousness of his crime, promptly accepting responsibility, and cooperating with the Government, Alejandro has also demonstrated his post-offense respect for the law. *Compare United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012) (affirming a sentence of six months of home monitoring, three years of probation, and 1,000 hours of community service for a defendant with a guidelines range of 87-108 months where there was no risk of recidivism and the loss numbers did not take into account the personal characteristics of the defendant); *Tomko*, 562 F.3d 558, 560 (3d Cir. 2007) (affirming a sentence of probation with a year of home detention and community service after taking into account the defendant's negligible criminal history, employment record, community ties, and extensive charitable works); *Gall*, 552 U.S. at 57-59 ((affirming a sentence of probation where there was "strong support that [defendant] was

---

[8] The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence* (July 2014). In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter crime. *See id.*

not going to return to criminal behavior and was not danger to society"). Alejandro has done everything not only to fully accept responsibility and completely and without reservation cooperate, but to show his profound shame and remorse.

E) **Letters of Support**

"For all right judgment of any man or thing, it is useful, nay essential, to see his good qualities before pronouncing on his bad."[9] Alejandro has separately filed letters of support from family and friends of Alejandro. The letters outline Alejandro's commitment to family and loved ones. They offer the Court perspective about Alejandro as a human being from the people who know him best. Of course, Alejandro's family and friends care about him and the sentence that the Court will impose will affect them deeply. But without question, the letters articulate Alejandro's character: "strong moral foundation[,]" "goal oriented[,]" "assumed total responsibility[,]" "takes full accountability[,]" "pain and disappointment his actions has caused his family." These letters show that Alejandro is a family-oriented young man, who has recognized the wrongfulness of his actions, and worthy of this Court's mercy.

## CONCLUSION

Alejandro respectfully requests that the Court carefully consider the significant factors above, including the full scope of his conduct, his complete acceptance of responsibility, the need to avoid unwarranted sentencing disparities, and his unlikeness to ever recidivate, in imposing a fair sentence. Alejando also respectfully requests that the Court, based on his personal history and characteristics, grant a sentence below the Guidelines range.

---

[9] Thomas Carlyle

Date: March 20, 2025

                                     Respectfully submitted,

                                 **STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
                                 Two South Biscayne Boulevard, Suite 1600
                                 Miami, FL 33131
                                 Tel.: (305) 614-1400
                                 By: */s/ Michael B. Nadler*
                                    MICHAEL B. NADLER
                                    Florida Bar No. 0051264
                                    mnadler@sknlaw.com
                                    MATTHEW DELLABETTA
                                    Florida Bar No. 1031216
                                    mdellabetta@sknlaw.com

                                 **MICHAEL R. BAND, P.A.**
                                 By: */s Michael R. Band*
                                 MICHAEL R. BAND
                                 Florida Bar No. 228338
                                 169 East Flagler Street
                                 Miami, FL 33131

## CERTIFICATE OF SERVICE

I certify that on this 20th day of March, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

                                     /s/ *Michael B. Nadler*
                                     MICHAEL B. NADLER